# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

|  |  |
|---|---|
| KEMESHA DELISSER, M.D.<br>5027 Road K.8 NE<br>Moses Lake, Washington  98837<br><br>    Plaintiff,<br><br>    v.<br><br>PHYSICAL MEDICINE ASSOCIATES, LTD.<br>  d/b/a NATIONAL SPINE<br>  AND PAIN CENTERS, LLC<br>3803 North Fairfax Drive, Suite 400<br>Arlington, Virginia  22203<br><br>Serve:  Corporation Service Company<br>        100 Shockoe Slip, 2nd Floor<br>        Richmond, VA 23219<br>        Registered Agent<br><br>    Defendant. | C.A. No. _____ |

## **COMPLAINT**

COMES NOW THE PLAINTIFF, KEMESHA DELISSER, M.D., by counsel, and moves this Court for entry of judgment in her favor, and against the Defendant, PHYSICAL MEDICINE ASSOCIATES, LTD. d/b/a NATIONAL SPINE AND PAIN CENTERS, LLC and in support of such motion alleges and avers as follows:

## **NATURE OF ACTION**

1. This is a civil action against the Defendant, Physical Medicine Associates, Ltd. d/b/a National Spine and Pain Centers, LLC alleging discrimination in violation of the Pregnancy Discrimination Act of 1978, which amended Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000e *et seq.*, prohibiting discrimination on the basis of pregnancy, childbirth, or related medical conditions.

## PARTIES

2. Plaintiff Kemesha Delisser, M.D. ("Dr. Delisser") is a resident and citizen of Washington State. At all times relevant hereto, Dr. Delisser was a resident of the District of Columbia, and employed by the Defendant at its Arlington, Virginia location.

3. Physical Medicine Associates, Ltd. d/b/a National Spine and Pain Centers, LLC ("National Spine") is a domestic corporation in good standing, with its principal office located in Fairfax, Virginia, and which owns and operates several locations in this judicial district, including in Fairfax County and Arlington County, where Dr. Delisser worked.

4. National Spine is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

5. National Spine has had between 201 and 500 employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, within the meaning of 42 U.S.C. § 1981a(b)(3)(C).

## JURISDICTION

6. This Court has jurisdiction over Plaintiff's claims under the Pregnancy Discrimination Act of 1978, 42 U.S.C. §§ 2000e *et seq.*,

7. The amount in controversy in this action exceeds the jurisdictional minimum amount for this Court.

8. National Spine is present in and regularly conducts business in this judicial district.

9. The causes of action alleged in this action arose or originated within the Eastern District of Virginia.

## VENUE

10. National Spine is present in and regularly conducts affairs and business activities in this judicial district.

11. The causes of action alleged in this action arose or originated in this judicial district.

12. The unlawful employment practices committed by Defendant occurred in this judicial district, employment records relevant to such practices are maintained and administered in this judicial district, Dr. Delisser was employed in this judicial district, National Spine is located in this judicial district, and Dr. Delisser would still be employed in this judicial district but for the unlawful practices of the National Spine.

13. Venue over Plaintiff's claims is proper in this Court pursuant to 28 U.S.C. § 1331.

## PROCEDURAL STATUS

14. Dr. Delisser filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission on or around June 13, 2019.

15. The EEOC issued a Notice of Right to Sue dated June 18, 2020.

16. All prerequisites to filing suit have been met, and this action is timely filed.

## BACKGROUND

17. Dr. Delisser began her employment with National Spine and Pain Centers ("National Spine" or the "Practice") in September 2012 as an Associate Physician. At the time of her separation of employment, her title was Executive Physician. Dr. Delisser's immediate supervisor was Anish Patel, M.D., Vice President of National Spine.

18. At all times throughout her employment, up until the events complained of herein (*i.e.*, her pregnancy), Dr. Delisser had never been the subject of any HR complaints and had never received any written reprimands or counseling.

19. Prior to taking maternity leave, Dr. Delisser had the flexibility to schedule patients in the manner that would allow her to see and treat them appropriately.

20. In 2018, Dr. Delisser informed National Spine of her pregnancy. Dr. Delisser took maternity leave consistent with National Spine's policies, and returned to work on February 11, 2019.

21. When Dr. Delisser returned from maternity leave, National Spine agreed that Dr. Delisser would be given two forty-five (45) minute breaks to pump breast milk. National Spine made no change to her requirement to see 20 patients each day. Dr. Delisser maintained the requirement to see 20 patients each day by condensing patient appointment times and extending the end of her day as necessary to accommodate patients, despite having a new baby at home.

22. Shortly after her return, on February 19, 2019, Dr. Delisser had a conversation with Assaf Gordon, M.D. ("Dr. Gordon"), a Senior Physician at the Practice, who also performs some administrative duties. During the conversation, Dr. Gordon implied that Dr. Delisser's maternity leave was to blame for the drop in numbers at the Arlington office, and he insisted that Dr. Delisser needed to minimize her breaks (which she was taking to pump breast milk), and see more patients during the day in order to increase her numbers.

23. Dr. Gordon made comments that implied Dr. Delisser's job was in jeopardy if she did not comply with his suggestions.

24. Dr. Gordon made these comments despite the loss of several support staff members while Dr. Delisser was on leave (who had not been replaced, leaving her without

adequate support and making it difficult to meet the schedule of 20 patients per day – a concern Dr. Delisser had raised several times), and notwithstanding the fact that he had been brought to the Arlington office to make up for the anticipated drop in number of patients seen during her leave (since the office would be one physician short).

25. In fact, Dr. Delisser's staffing level was never restored to what it was before she went out on maternity leave. When Dr. Delisser went out on leave, she had one physician assistant, one nurse practitioner, 2.5 medical assistants, and three staff members at the front desk. Within two weeks of Dr. Delisser's return, she had had no physician assistant, no nurse practitioner, one medical assistant (who she had to share on some days with Dr. Gordon) and two staff members at the front desk (sometimes one).

26. On February 20 or 21, 2019, Dr. Delisser spoke with Marisa Catignani ("Ms. Catignani"), the Regional Manager about her conversation with Dr. Gordon.

27. On March 7, 2019, Dr. Delisser received an email from Ms. Catignani asking for slots in her schedule to double-book new patient consultations. The email stated that two such slots would be "ideal." In response, on March 8, Dr. Delisser's Office Manager responded that Dr. Delisser would allow one double-booked slot, at 1:30 PM.

28. On March 8, 2019, Dr. Delisser also sent an email to Ms. Catignani protesting that the call center had been given permission to arbitrarily, and at-will, double-book her schedule. Prior to this, Ms. Catignani had been personally directing staff to add patients to her schedule where she saw fit. Ms. Catignani forwarded her email to Dr. Patel asking, "Is she able to request that the comm center not double book NPCs? What is the best next step for her email, below?"

29. Dr. Patel responded to the email by stating that everyone has to double-book, emphasizing that the Arlington office was "in the red." This was referring to revenue numbers

during Dr. Delisser's maternity leave, for which he was clearly holding her currently accountable.

30. Contrary to Dr. Patel's statement, not all physicians were made to double-book. In addition, despite Dr. Patel's concerns that the Arlington office was "in the red" and "everyone" was pitching in to increase the number of patients seen, Dr. Gordon only worked two half days at the Arlington office, and after Dr. Delisser's return, she was effectively alone as the only physician, a total of four days each week (three full days, plus half of each of the other two days when Dr. Gordon worked a half day), making it increasingly difficult to take the required breaks to pump breast milk.

31. By arbitrarily and freely double-booking patients in excess of the one slot Dr. Delisser had agreed to, National Spine ensured that Dr. Delisser would not be able to take the required breaks to pump her breast milk; and not be able to see the number of patients now required of her while still giving each patient the time and attention they deserve.

32. When Dr. Delisser protested the double booking, National Spine's ultimate response was that it wanted staff to call patients and reschedule them to a different time on the same day - a solution that would be certain to cut in to or eliminate her pump breaks, inconvenience her patients, anger and upset some patients, and which would hurt her professional reputation, ratings, and relationships with her patients.

33. On March 18, 2018, Dr. Delisser participated in a telephone conference with Mayo Friedlis, M.D. ("Dr. Friedlis"), Brittany Schwemmer ("Ms. Schwemmer") (Senior HR Manager) and Dr. Patel regarding staffing issues, and in particular, staff complaints relating to her tone. During the call, Dr. Delisser acknowledged the stress created by the work environment she was being subjected to, as well as the lack of support staff caused by staff departures while

she was on leave, may have impacted her tone or temper on occasion.  Dr. Delisser thanked them for bringing these issues to her attention, and vowed to correct them.

34. During that same call, Dr. Delisser expressed her concern that she was being investigated for these complaints, yet nothing had been done to address her own complaints of harassment and discrimination made when speaking with Ms. Catignani, when Dr. Delisser reported to her that a senior physician, Dr. Gordon, had stated to her that she should be more productive and minimize her (pumping) breaks.  When Ms. Schwemmer stated that she had not been told about her complaints, Dr. Delisser asked if she needed her to file something formal, asking, "If you need me to file something formal, is it just an email or letter?  Is there a form?  How should I go about this?"  Dr. Delisser's intent and desire to pursue the complaint was clear.

35. Ms. Schwemmer did not initially respond and instead, Dr. Friedlis responded, "I think we should first just talk about it and find out what we need to do to fix it."  Dr. Friedlis assured Dr. Delisser that Dr. Gordon was in no position to threaten her job, and said several times, "your job is not at stake."

36. On March 21, 2019, Dr. Delisser submitted a formal, written complaint of harassment and discrimination to Sheri Wisner ("Ms. Wisner") of HR, and Brittany Schwemmer.  In the complaint, Dr. Delisser reiterated that she had previously reported Dr. Gordon's discriminatory and harassing comments, including that she was not seeing enough patients and needed to minimize her "breaks" after her recent return from maternity leave (to an understaffed office), to her regional manager, two Vice Presidents, the COO and a founding member of National Spine, and that no action had been taken to address or otherwise investigate her complaint.  Dr. Delisser stated her belief that the HR investigation was in retaliation for her complaints about Dr. Gordon and her schedule.

7

37. The complaint also described what Dr. Delisser believed to be National Spine's active and concerted efforts to eliminate her pumping breaks by unilaterally, and without her permission, double booking new patients on her schedule, which effectively eliminated her pump time since Dr. Delisser had to use that time to see the double booked patients. This was in sharp contrast to Dr. Gordon's ability to maintain his half day schedule at the North Arlington office.

38. National Spine's repeated insistence that Dr. Delisser work more than she did prior to her maternity leave, with less support and staff, at the cost of her nursing breaks, created a discriminatory and hostile work environment.

39. Despite Dr. Friedlis' assurances during the March 18 telephone conference, follow up communications with Ms. Schwemmer, and the formal HR complaint filed March 21, on March 25, 2019, just six weeks after Dr. Delisser returned from maternity leave and four days after filing her HR complaint, Dr. Delisser received an "Employee Counseling Statement," punishing her for not agreeing to the new demands being placed on her. Specifically, as part of the Counseling Statement, National Spine claimed Dr. Delisser was:

- Undermining recent directives and attempts to improve productivity;

- Failing to exhibit provider flexibility and accountability;

- Refusing to adjust daily schedules, accept add-on appointments, and implement 15-minte patient follow-ups to support appropriate patient volumes;

- Turning away late patients and extending patient follow-ups in order to limit daily encounters even though current volumes are below average provider levels;

- Speaking to staff in a threatening and/or condescending tone; and

- Making inappropriate comments to staff in front of other employees and/or patients.

40. The Counseling Statement prohibited Dr. Delisser from placing limits on the number of patients seen each day, and prohibited her from disallowing schedule add-ons and double booking. It required any changes to her schedule to go through a VP or the COO.

41. The Counseling Statement warned that Dr. Delisser's inability to meet "patient volume expectations" could result in further disciplinary action, including "termination."

42. Meanwhile, similarly situated male physicians were permitted to work part-time schedules certain days with no similar treatment or discipline.

43. When Dr. Delisser had a telephone conference with HR on March 27, 2019 (Ms. Wisner and Mr. Schwemmer), Ms. Wisner stated that the scheduling was not related to her complaints of discrimination and harassment, and would not discuss it in that context, stating only that they "won't be able to help or really do anything . . ." This completely ignored Dr. Delisser's formal complaint, in which Dr. Delisser tied the scheduling directly to her complaints of discrimination and harassment.

44. After returning from maternity leave, Dr. Delisser was forced to work more cases with less support, and without being given the promised breaks to express breast milk, which is essential for both her health, and that of her newborn child. The fact the individuals interfering with these important health issues are physicians just makes the conduct even more egregious.

45. On April 11, 2019, Dr. Delisser resigned her employment due to National Spine's treatment of her, and the hostile environment to which she had been subjected since her return from maternity leave, including refusing to allow her to manage her schedule as she had previously, compromising her ability to nurse her child, attempts to damage her professional relationships and reputation by double booking patients (many of who were already dealing with severe pain issues and could not be made to wait through another patient appointment – or two

9

patient appointments).  Dr. Delisser was unable to tolerate the treatment and environment any longer.

46. During the time Dr. Delisser worked out the required 90 day notice period per her contract, she was subjected to undue scrutiny and criticism, which was unjustified by her conduct (such as trying to transition her long standing patients to another provider at National Spine).

47. Dr. Delisser was discriminated against on the basis of a medical condition related to her pregnancy, and retaliated against and subjected to a hostile work environment because she requested and insisted she be allowed to take the required breaks to pump breast milk, as National Spine had agreed upon her return from maternity leave.  After Dr. Delisser complained of the hostile work environment, she was subjected to further acts of retaliation, including being subjected to an HR investigation and an Employee Counseling Statement.

## COUNT ONE -
## DISCRIMINATION IN VIOLATION OF THE
## PREGNANCY DISCRIMINATION ACT

48. The allegations of each of the preceding paragraphs are incorporated herein as if specifically realleged.

49. National Spine discriminated against Dr. Delisser and subjected Dr. Delisser to a continuing hostile work environment because she requested breaks during the workday in order to express breast milk (a pregnancy related medical condition) for her infant, upon her return from FMLA maternity leave, and because she objected when National Spine manipulated her patient schedule in such a way that Dr. Delisser's requested breaks to pump breast milk, which had been agreed to by National Spine, were eliminated.

50. Such acts of discrimination and hostile work environment included:

- Refusing to accommodate pumping/nursing breaks for Dr. Delisser upon her return from maternity leave;

- Mandating that Dr. Delisser double book her patients which had the effect of eliminating breaks with sufficient time for pumping breast milk;

- Dr. Gordon insisting that Dr. Delisser minimize her pumping breaks in order to see more patients and increase her numbers (despite the lack of adequate support staff); and

- Maintaining the requirement for Dr. Delisser to see 20 patients each day by condensing patient appointment times and extending the end of her day as necessary to accommodate patients, despite her having a new baby at home.

51. In discriminating against Dr. Delisser in violation of federal law, National Spine evidenced malice, spite, and ill will; its actions were willful and wanton; and evinced a conscious disregard for the rights of Dr. Delisser.

52. As a direct and proximate result of the Defendant's actions, Dr. Delisser has suffered and continues to suffer severe emotional distress and physical injury. Such injury includes pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, depression, anxiety, fearfulness, difficulty sleeping, loss of enjoyment of life, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, and other non pecuniary losses.

53. Due to the conscious disregard for Dr. Delisser's federally protected rights, and the severity of National Spine's conduct, Dr. Delisser is also entitled to punitive damages.

**COUNT TWO -
RETALIATION IN VIOLATION OF THE
<u>PREGNANCY DISCRIMINATION ACT</u>**

54. The allegations of each of the preceding paragraphs are incorporated herein as if specifically realleged.

55. National Spine retaliated against Dr. Delisser for insisting that she be allowed to take the required breaks for pumping breast milk, as National Spine had agreed to upon her return from maternity leave, and for complaining when her breaks were eliminated.

56. On March 21, 2019, Dr. Delisser submitted a formal, written complaint of retaliation, harassment and discrimination, including that her prior complaints regarding the discrimination and hostile work environment to which she had been subjected since her return from maternity leave had not been addressed, and that instead, she had become the subject of an HR investigation regarding staffing issues and her "tone."  Dr. Delisser stated her belief that the HR investigation, and National Spine's repeated insistence that she work more than she did prior to her leave, with less support and staff, at the cost of her nursing breaks, created a discriminatory and hostile work environment, and was retaliation for her complaints about the mandates and restrictions placed on her regarding her patients, her schedule and her nursing breaks (which had been agreed to and promised to her by National Spine) since returning from maternity leave.

57. Despite Dr. Friedlis' assurances during the March 18, 2019 telephone conference that National Spine would take steps to remedy the situation, and despite follow up communications with Ms. Schwemmer, and the formal HR complaint filed by Dr. Delisser on March 21, on March 25, 2019, just six weeks after Dr. Delisser returned from maternity leave and four days after filing her HR complaint, Dr. Delisser received an "Employee Counseling Statement" (*i.e.*, a performance improvement plan).

58. The Counseling Statement prohibited Dr. Delisser from placing limits on the number of patients seen each day, and prohibited her from disallowing schedule add-ons and double booking.  It required any changes to her schedule to go through a VP or the COO.

59. The Counseling Statement warned that Dr. Delisser's inability to meet "patient volume expectations" could result in further disciplinary action, including "termination."

60. After returning from maternity leave, Dr. Delisser was forced to work more cases with less support, and without being given the promised breaks to express breast milk, which is essential for both her health, and that of her newborn child. The fact the individuals interfering with these important health issues are physicians just makes the conduct even more egregious.

61. On April 11, 2019, Dr. Delisser resigned her employment due to National Spine's treatment of her, and the hostile and retaliatory environment to which she had been subjected since her return from maternity leave. Dr. Delisser was unable to tolerate the retaliatory treatment and environment any longer.

62. During the time Dr. Delisser worked out the required 90 day notice period per her contract, she was been subjected to undue scrutiny and criticism, which is unjustified by her conduct (such as trying to transition her long standing patients to another provider at National Spine).

63. National Spine retaliated against Dr. Delisser by placing subjecting her to an Employee Counseling Statement (which was, in essence, a performance improvement plan), and by engaging in conduct which resulted in the constructive termination of Dr. Delisser.

64. In retaliating against Dr. Delisser, and then constructively terminating Dr. Delisser in violation of federal law, National Spine evinced malice, spite, and ill will; its actions were willful and wanton; and evinced a conscious disregard for the rights of Dr. Delisser.

65. National Spine engaged in these practices with malice and with reckless indifference to the federally protected rights of Dr. Delisser.

66. As a direct and proximate result of the Defendant's actions, Dr. Delisser has suffered and continues to suffer severe emotional distress and physical injury. Such injury includes pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, depression, anxiety, fearfulness, difficulty sleeping, loss of enjoyment of life, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, and other non pecuniary losses.

67. Due to the severity of Defendant's conduct, Dr. Delisser is also entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, KEMESHA DELISSER, M.D. requests that this Court enter judgment in her favor against the Defendant PHYSICAL MEDICINE ASSOCIATES, LTD. d/b/a NATIONAL SPINE AND PAIN CENTERS, LLC and further:

a) Award Plaintiff compensatory damages, plus demonstrated past and future pecuniary damages on each of the above-stated Counts; and in addition

b) Award Plaintiff punitive and exemplary damages, to be determined by a jury, and in any event to be restricted by the statutory cap on Counts One and Two; and in addition

c) Award injunctive relief consisting of an order prohibiting Defendant from engaging in further employment practices that create or tolerate discriminatory or retaliatory work environment based on pregnancy; and in addition

d) Award Plaintiff her costs, including but not limited to reasonable attorneys' fees and any expert witness fees, and in addition

e) Award Plaintiff such other and further relief as may be appropriate.

## **JURY DEMAND**

**PLAINTIFF KEMESHA DELISSER, M.D. DEMANDS A TRIAL BY JURY.**

July 31, 2020

*/S/ CARLA D. BROWN*
Carla D. Brown, VSB 44803
cbrown@cbcblaw.com
CHARLSON BREDEHOFT
 COHEN & BROWN, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
(703) 318-6800 Telephone
(703) 318-6808 Facsimile
*Counsel for Plaintiff,*
 *Kemesha Delisser, M.D.*